# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Docket No. 1:13-CR-10285-DJC |
| | ) | |
| PHILLIP THOMPSON | ) | |

## DEFENDANT PHILLIP THOMPSON'S MOTION FOR A *BOOKER* VARIANCE AND SENTENCING MEMORANDUM

Pursuant to FRCrP 32 and the Court's Procedural Order of April 22, 2014, defendant Phillip Thompson, through counsel, files this **Motion for a *Booker* Variance** and offers this memorandum in support thereof. The Presentence Investigation Report (PSR) prepared by the probation officer recommends an Advisory Guideline Range (AGR) of 46 to 57 months. The defendant has contested this recommendation, having objected to the application of a specific offense characteristic concerning additional firearms. The defendant avers that, instead, the AGR should be 36 to 47 months.[1] Beyond this, the defendant contends that certain characteristics of the defendant – in particular his having suffered from a chronic Posttraumatic Stress Disorder since age ten after the murder of his older sister – suggest strongly that one of the primary foci of any sentence should be correctional treatment of the defendant. It also suggests that a sentence within the AGR determined by the Court would be greater than necessary to accomplish the four purposes of sentencing found in 18 U.S.C. § 3553(a)(2)(A-D). The defendant urges the Court to consider a *Booker* variance and impose a sentence of 24 months' imprisonment with a judicial recommendation for psychiatric treatment; three years' supervised release with mental health treatment, vocational training, and search special conditions; and a $100 special assessment.

## Objection to Application of U.S.S.G. § 2K2.1(b)(1)(A)

The defendant reiterates, and wishes to herein incorporate by reference, his objection to the probation officer concerning her application of U.S.S.G. § 2K2.1(b)(1)(A) and the grounds

---

[1] The probation officer has concluded that the total offense level should be 19 while the defendant contends that it should be 17. The Criminal History Category of IV is uncontested. The specific offense characteristic in question is U.S.S.G. § 2K2.1(b)(1)(A).

advanced therefor. Essentially, it is the defendant's position that the preponderance of the evidence standard has not been met to justify its application. If the Court sustains the objection, then the total offense level would be changed to 17 and the AGR to 37 to 46 months.

### History and Characteristics of the Defendant

The probation officer has done a commendable job in relating the defendant's personal and family history in the PSR. Dr. Eric Mart, in his Confidential Psychological Report (CPR),[2] has also addressed much of that same history. What emerges from both is the following picture of the defendant's life.

1. The defendant was raised with four maternal half siblings in a single parent home, his father never having played a role in the defendant's life. (PSR, ¶ 57). The defendant's mother was disabled, and the family subsisted on public assistance. (PSR, ¶ 58). This notwithstanding, the defendant shared a positive relationship with his mother and half-siblings (PSR, ¶ 59), and the climate of the family home was "happy and harmonious while growing up." (CPR, p. 2).

2. A key event in the defendant's life occurred at age 10 when his half-sister, Cheryl, was murdered by her boyfriend. This traumatic experience has had a profound effect on the defendant's life in that it has caused him to periodically experience depression. (PSR, ¶ 59, ¶ 80). As a result, the defendant told Dr. Mart that he "realized that 'nothing is promised except death'" and that "he stopped going to church and generally stopped worrying about the consequences of his actions." (CPR, p. 3). The defendant has participated in limited related mental health treatment, once in 1997 (PSR, ¶ 80), and again in 2004 while in DYS custody (PSR, ¶ 82).

3. Starting in the third grade, the defendant was placed on an Individual Education Plan to address unspecified learning disabilities. He attended a number of alternative schools before dropping out after completing the eleventh grade.[3] (PSR, ¶ 90, ¶ 91). He admitted to Dr. Mart having "behavior problems and difficulty interacting with peers and teachers." (CPR, p. 2). The defendant, according to Dr. Mart, is functionally illiterate. (CPR, p. 4).

---

[2] Mart, Eric G., Ph.D., ABPP, "Confidential Psychological Report," dated August 28, 2014.
[3] The defendant has reportedly received Social Security Disability benefits since age 16 due to his learning disabilities. (PSR, ¶ 95).

4. Apart from those times when he was in custody, the defendant has used marijuana on a daily basis since age 13.  (PSR, ¶ 87).  He began consuming alcoholic beverages at age 16 and has consumed between six and twelve beers per day since 2010-2011.  (PSR, ¶ 88).  The defendant, according to Dr. Mart, "uses alcohol and marijuana as a way of relaxing and tolerating social situations."  (CPR, p. 5).

5. Having little in the way of marketable skills, the defendant has an unremarkable employment history.  (PSR, ¶¶ 95 - 100).

6. The defendant was a member of the Asian Boyz Gang from ages 14 to 18 but claims no association with the group since 2006.  (PSR, ¶ 81).  The defendant's first encounter with law enforcement was at age 13, and after two subsequent juvenile adjudications, he was in DYS custody from 02/14/2003 to 12/13/2005, his eighteenth birthday.  (PSR, ¶¶ 35 – 37).  The defendant has also incurred a number of adult criminal convictions, for which he has spent a not inconsiderable amount of time in custody.  (PSR, ¶¶ 38 – 45).

The foregoing suggests that despite a somewhat promising early life in a single parent household, the defendant's life was profoundly affected at age ten and subsequently by the murder of his half-sister.  The experience has caused him to experience depression and anxiety periodically since its occurrence.  He has not had any effective mental health treatment to address these issues.  This circumstance has been compounded by his learning disabilities and somewhat limited intellectual functioning.  What subsequently occurred was the defendant's early use of mind-altering drugs and alcohol, and juvenile adjudications resulting in DYS placement.  The defendant dropped out of high school and has no marketable job skills.  His antisocial behavior in the form of criminal charges has continued into his adulthood.

After interviewing the defendant and conducting a number of psychological tests, Dr. Mart came to the conclusion that the defendant suffers from chronic Posttraumatic Stress Disorder, the symptoms of which are "moderate to severe and *cause severe impairment* [our emphasis] in his level of functioning." Dr. Mart went on to state:

> *The results of this evaluation indicate that Mr. Thompson's intellectual abilities are in the well below average to below average range.  This is consistent with his difficulties in school and his failure to obtain his GED.  In addition, Mr. Thompson suffers from a variety of significant psychological disorders.  He is depressed and extremely anxious.  He vacillates between episodes of aggressive acting out and more generalized socially phobic, ruminative, and withdrawn states.  His level of interpersonal suspiciousness may sometimes rise to delusional levels.  He uses alcohol and marijuana as a way of relaxing and tolerating social situations.  Finally, he suffers from long-standing symptoms of*

*posttraumatic disorder, with symptoms from the avoidant and hyperarousal clusters being most prominent.* (CPR, p. 5).

Dr. Mart advised counsel verbally that the defendant's below average intellectual functioning, combined with his longstanding Posttraumatic Stress Disorder, formed the background for the defendant's never wanting to be in a position, unlike his sister, where he was unable to defend himself. This, at least in part, explains why the defendant possessed the firearm in the instant case.

Based on the foregoing, Dr. Mart recommends the following course of action:

*Given Mr. Thompson's wide range of severe psychological problems, I think he would benefit from ongoing psychiatric consultation to determine whether some form of psychopharmacological intervention would assist him with his emotional problems. Individual psychotherapy designed to help him regulate his emotions and behavior would likely be helpful as long as it is concrete and solution focused. Group therapy is likely contraindicated because of Mr. Thompson's interpersonal suspiciousness and difficulty sharing emotions.* (CPR, p. 6).

**Analysis in Light of 18 U.S.C. § 3553(a)(2)(A-D) Sentencing Purposes**

Before imposing sentence, the Court is obligated to address the sentencing purposes recounted in 18 U.S.C. § 3553(a)(2)(A-D). An analysis of this case in light of those purposes follows.

*(A)  To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.*

The defendant does not deny the seriousness of the offense or the need for a term of imprisonment to promote respect for the law. The defendant would hope, however, that the Court would place the offense in the context of the "severe impairment in his level of functioning" due to the posttraumatic stress disorder the defendant has long suffered from. (CPR, p. 5). Treatment for this disorder, which has been nearly nonexistent for the defendant, should also be the centerpiece of any sentence imposed by the Court.

*(B) To afford adequate deterrence to criminal conduct.*

The fact of the imposition of a term of imprisonment, whatever its length, will serve to deter others from acting as the defendant did in this case.

*(C) To protect the public from further crimes of the defendant.*

4

During the term of community supervision, the public will be protected from further crimes of the defendant if that supervision is close and if that supervision includes a search condition for firearms or contraband. Moreover, effective monitoring of the special condition for treatment, with the goal of assisting the defendant to become a law-abiding and productive citizen, will also contribute to the public's protection.

*(D)  To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

As clearly recommended by Dr. Mart, mental health treatment in the form of ongoing psychiatric consultation and individual psychotherapy should be carried both while the defendant is in custody and when he is under community supervision. Sustained effort should also be expended in assisting the defendant to obtain both a GED and marketable job skill.

For all of the foregoing reasons, the defendant believes that a sentence of imprisonment within the AGR would be greater than necessary to achieve the four statutory purposes of sentencing. The defendant has long suffered from a posttraumatic stress disorder that has had severe implications for his functioning in the community. It played a role, certainly, in the instant offense and could plague him in the future if it is not effectively addressed with treatment. The defendant submits that a judicious mix of imprisonment, treatment, and vocational training, together with close and effective supervision by the probation office, will serve the interests of justice for both the defendant and the public.

Accordingly, the defendant urges the Court to consider imposing the following non-Guidelines sentence under *Booker*:

> Imprisonment for 24 months, with a judicial recommendation to the Bureau of Prisons for psychiatric treatment and individual psychotherapy;
> Supervised release for three years, with special conditions for mental health treatment, vocational training, and search of the defendant's premises and effects;
> Special assessment of $100.

                                                Respectfully submitted,
                                                Phillip Thompson,
                                                By His Attorney,

DATE:      September 8, 2014

                                                /s/ Paul J. Garrity
                                                Paul J. Garrity
                                                Bar No. 555976
                                                14 Londonderry Road
                                                Londonderry, NH 03053
                                                603-434-4106
                                                garritylaw@myfairpoint.net

## CERTIFICATE OF SERVICE

I, Paul J. Garrity, hereby certify that on this 8th day of September, 2014, a copy of the within Motion for Booker Variance and Sentencing Memorandum has been efiled to all parties on record and mailed, postage prepaid, to Phillip Thompson.

                                                /s/Paul J. Garrity