<pre>
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF MASSACHUSETTS
 2

 3    _____

 4    UNITED STATES OF AMERICA,

 5                    Plaintiff,        Criminal Action
                                       No. 13-10285-DJC
 6    V.
                                       September 15, 2014
 7    PHILLIP THOMPSON,                3:02 p.m.

 8                    Defendant.
      _____
 9

10

11                    TRANSCRIPT OF SENTENCING

12            BEFORE THE HONORABLE DENISE J. CASPER

13               UNITED STATES DISTRICT COURT

14            JOHN J. MOAKLEY U.S. COURTHOUSE

15                    1 COURTHOUSE WAY

16                   BOSTON, MA  02210

17

18

19

20
                      DEBRA M. JOYCE, RMR, CRR
21                    Official Court Reporter
                    John J. Moakley U.S. Courthouse
22                 1 Courthouse Way, Room 5204
                        Boston, MA  02210
23                   joycedebra@gmail.com

24

25
</pre>

```
 1    APPEARANCES:

 2    FOR THE GOVERNMENT:

 3    TIMOTHY E. MORAN, ESQ.
      U.S. Attorney's Office
 4    One Courthouse Way, Suite 9200
      United States Courthouse
 5    Boston, MA 02210
      617-748-3100
 6
      FOR THE DEFENDANT:
 7
      PAUL J. GARRITY, ESQ.
 8    14 Londonderry Road
      Londonderry, NH 03053
 9    603-434-4106

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>P R O C E E D I N G S</u>

1

2          (The following proceedings were held in open

3  court before the Honorable Denise J. Casper, United States

4  District Judge, United States District Court, District of

5  Massachusetts, at the John J. Moakley United States Courthouse,

6  1 Courthouse Way, Boston, Massachusetts, on September 15, 2014.

7          The defendant, Phillip Thompson, is present with

8  counsel.  The Assistant U.S. Attorney is present.)

9          THE CLERK:  Criminal action 13-10285, <u>United States v.</u>

03:02 10  <u>Phillip Thompson</u>.

11          Would counsel please state your name for the record.

12          MR. MORAN:  Good afternoon, your Honor.  Timothy Moran

13  for the United States.

14          THE COURT:  Good afternoon, counsel.

15          MR. GARRITY:  Good afternoon, your Honor.  Paul

16  Garrity for Phillip Thompson.

17          THE COURT:  Good afternoon, counsel.

18          Good afternoon, Mr. Thompson.

19          THE DEFENDANT:  Good afternoon.

03:03 20          THE COURT:  Counsel, Mr. Thompson, I know we're here

21  for sentencing.  I just want to make sure that I've received

22  and reviewed all of the written materials that counsel wanted

23  me to review.  I've received and reviewed the presentence

24  report as revised September 5th.  I've received a sentencing

25  memo on Mr. Thompson's behalf on September 8th.  I've received

1    the government's sentencing memo filed September 12th, and I

2    also -- I should note that there were attachments to both

3    memos, which I had a chance to read.  I also believe,

4    Mr. Moran, I have the government's forfeiture motion still

5    pending; is that right?  Docket 39?

6            MR. MORAN:  Yes, Docket 39 is correct, your Honor.

7    There is the proposed order of forfeiture attached.

8            THE COURT:  Counsel, any other written materials that

9    you wanted me to review?

03:04 10         MR. MORAN:  Not from the government, your Honor.

11           MR. GARRITY:  I just wanted to make sure there was an

12   amendment or addendum to Dr. Mart's report that I mailed down

13   on Thursday or Friday.  I just want to make sure the Court has

14   that.

15           THE COURT:  Give me a chance, counsel, here.

16           Do you know if that was filed on -- wait.  Was that

17   filed on the docket?

18           MR. GARRITY:  It was not, Judge.  It was -- I got it,

19   I believe, on Thursday or Friday and e-mailed it down to the

03:04 20  clerk.

21           THE COURT:  Counsel, do you have a spare copy of it?

22           MR. GARRITY:  I do, your Honor.

23           THE COURT:  You can pass it forward.

24           Is this something Mr. Moran already has?

25           MR. GARRITY:  It is.

1          MR. MORAN:  I have it, your Honor.

2          THE COURT:  You can bring it forward.

3          (Pause.)

4          THE COURT:  Okay.

5          Counsel, I've had a chance to review it.  This is a

6    letter dated September 11, 2014, again, from Dr. Mart.  He

7    makes reference in here to some things I know he makes

8    reference to in the report that was attached to your memo, but

9    I appreciate having that.

03:06 10          Mr. Garrity, anything other than that addition?

11          MR. GARRITY:  No, your Honor, nothing in writing.

12          THE COURT:  Nothing in writing.

13          Counsel, have you had a chance to review the

14    presentence report with Mr. Thompson?

15          MR. GARRITY:  We have, your Honor.

16          THE COURT:  And as I understand it, I know there were

17    some objections, but I think Probation's responses may have

18    resolved the one issue --

19          MR. GARRITY:  They have, your Honor, he did.

03:06 20          THE COURT:  So with that said, counsel, are there any

21    objections to either the factual contents or the calculation of

22    the offense level or criminal history here?

23          MR. GARRITY:  Not an objection, Judge.  Just one brief

24    correction to some of what's outlined in the PSR with respect

25    to mental health treatment that Mr. Thompson may have received

1    when he was younger.

2            THE COURT:  Yes.

3            MR. GARRITY:  I base this on a phone call my office

4    received maybe about two hours ago.  When he was younger, he

5    went to Tri-City, which is a mental health facility in Lynn,

6    it's now Eliot Community Council.  We had faxed over to them a

7    release for records, asked for those records repeatedly.  They

8    finally responded today and said the only record they have is

9    that Mr. Thompson, when he was younger, he or his mother had

03:07 10    scheduled an appointment and it never happened.  There was no

11    counseling ever provided or treatment ever provided.  So I

12    think the report talks about maybe two sessions there, and that

13    actually never took place, is what they tell us.

14            THE COURT:  Okay.

15            And so that's not an objection to the contents of the

16    report, just a clarification for my benefit.

17            MR. GARRITY:  Yes, your Honor.

18            THE COURT:  Counsel, other than that, no objections

19    that haven't been addressed to the PSR?

03:07 20            MR. GARRITY:  No, your Honor.

21            THE COURT:  Okay.

22            From the government?

23            MR. MORAN:  No, your Honor.

24            THE COURT:  Counsel, with that said, and having

25    reviewed the calculations by Probation, I will adopt those

1  calculations: base offense level of 20, adjusted three levels

2  downward for acceptance of responsibility to a total offense

3  level of 17, based on the scoring of nine criminal history

4  points, Criminal History Category IV, for an advisory guideline

5  sentencing range of 37 to 46 months; a supervised release range

6  of one to three years; a fine range of $5,000 to $50,000; and a

7  mandatory special assessment of $100; as well as the forfeiture

8  consequences that are the subject of the government's motion.

9      Mr. Moran, I've had a chance to review your sentencing

03:09 10  memo, but I'll hear your recommendation.

11      MR. MORAN:  Your Honor, the government requests a

12  sentence of 42 months' imprisonment, which is at the middle of

13  the guideline range that the Court has noted.  It would also

14  request three years of supervised release, which is at the high

15  end of the guideline range of supervised release.  No fine,

16  because it does not appear the defendant has the ability to pay

17  a fine or will be able to pay a fine in the future.  And of

18  course, the special assessment and forfeiture as laid out in

19  our motion, which is Docket number 39.

03:09 20      If I can touch on a couple of issues, your Honor,

21  which are alluded to in my memorandum.

22      First of all, this kind of case is really at the core

23  of what we've been attempting to accomplish with Operations

24  Melting Pot and Whiplash, which are really directed towards

25  ending the scourge -- the cycle of gang and drug --

1   gang-related violence and drug trafficking related violence.  I

2   hope your Honor, perhaps, had a chance to look at that article

3   from the Globe which notes sort of the ongoing effect in Lynn,

4   the positive effect that we've been able to have.

5        I don't need to dwell on the cycle of guns and drugs

6   and violence and drug trafficking, I think the Court is

7   familiar with that.  It's not unusual to see it in this

8   courthouse at all.

9        One of the things I want to you touch on is I know

03:10 10  that my brother contests whether Mr. Thompson is still a member

11  of the gang.  He admits to having been a member of the gang,

12  says he dropped out.  So often in these cases in this building

13  we get tied up in knots whether the defendant is currently a

14  gang member, whether he was formerly a gang member.  In my

15  view, that's often beside the point.  Certainly what we're

16  targeting is gang-themed violence, but really what we're

17  getting at is violence over drug sales.

18       What matters to me, your Honor, is that when the

19  search occurred, there was abundant evidence of drug dealing,

03:11 20  not just the drugs but the drug-cutting agents, the Inositol,

21  the Baggies, the multiple phones, things that clearly evidence

22  a drug -- an ongoing drug dealing operation.  You combine that

23  with a gun, and that's the perfect recipe for violence, and

24  that's exactly what we're talking about here.

25       It's a good thing that, obviously, he was caught

1    before any violence we know of occurred, but that's really what

2    we're targeting.  And I just can't stress enough that you

3    can't -- the message has got to be unequivocal, certainly

4    dealing drugs is bad enough, but you cannot deal drugs with a

5    gun, because that's -- in that sort of a neighborhood, in that

6    sort of a place, whether you're a gang member or former gang

7    member, it doesn't really matter, but that's a recipe for

8    violence.

9         Again, it really is the case, because a person may say

03:12 10  to himself, you know what, I'm out of the gang, I'm not in the

11   gang anymore, but that doesn't mean the other gang members know

12   that of either side, and it doesn't mean that the guy that you

13   got in a fight with when you were a member of the gang cares if

14   you're no longer a member of the gang, because he still wants

15   to get back at you.  So simply saying, I'm not a gang member,

16   doesn't deescalate the violence.  And certainly, when you've

17   got a gun there, that's really what we're worried about most

18   directly.

19        Secondly, your Honor, I just want to highlight the

03:12 20  defendant's criminal record.  In my memorandum -- obviously

21   it's laid out very well by Probation, as they always do.  In my

22   memorandum I made some effort to kind of put it together,

23   because it's a little confusing as to when events happened,

24   when he was in and out, but as I can basically see, as best I

25   can see, he basically did a 36-month sentence and served it at

1    two different times and got credit for three different

2    convictions for that, and then he reoffended in this case, in

3    addition to a number of other reoffendings, he wouldn't have

4    done the whole 36 months if he hadn't violated probation.

5    Basically two things become clear, there's a history of

6    reoffending, and he's already done 36 months in the state.  I

7    think it's important that the numbers should be going up.  The

8    message has got to be it doesn't get better for a defendant as

9    he continues to reoffend, it has to get worse, otherwise

03:13 10   there's -- the incentives are simply wrong.  And the criminal

11   record really hints at his dangerousness.

12          Now, my brother has brought to the Court's attention,

13   as well he should, that the defendant has some psychological

14   issues; he's had a difficult upbringing.  While I say I have

15   some sympathy to that on a personal level, in terms of what is

16   the appropriate sentence, that kind of information is always a

17   two-edge sword, I think, because, on the one hand, it may hint

18   at lesser moral culpability for what the defendant may have

19   done, although I don't know that I necessarily agree with that,

03:14 20   because Dr. Mart knows that Mr. Thompson knew his actions were

21   illegal, understood his actions were illegal.  So I don't know

22   that this is a case of lesser moral culpability.  But my point

23   is that Mr. Thompson is a dangerous man and will remain a

24   dangerous man, and that creates a greater need for specific

25   deterrence of him.  So while we're sympathetic with the

1  psychological issues he's had to deal with, that really hints

2  at a greater need for incarceration in order to protect the

3  public from what he might do in the future.

4       Finally, your Honor, I would note that we approach

5  cases like this programatically, and I think the sentence of 42

6  months, which is at the midpoint of the advisory guideline

7  range, for the reasons I've already alluded to, this would be

8  consistent with and lower than some of the other sentences that

9  defendants have received for possessing a firearm under similar

03:15 10  circumstances and we alluded to some of that in the sentencing

11  memo and I would be able to provide more information if the

12  Court would like.

13       For all those reasons, we think -- and finally, your

14  Honor, I did request the high end of the range on supervised

15  release of three years.  Given his past issues with violations

16  of probation and his psychological issues, I think a longer

17  term of supervised release would be required here, and I always

18  propose that not so much as a punishment, but really because I

19  think the United States Probation Officers do a very good job

03:16 20  and can only help a man like Mr. Thompson as he comes out of

21  federal prison for however long he's served, can only help him

22  get the therapy he may need at that point, and help him to

23  adjust in a productive way so that we hopefully never see him

24  again.

25       THE COURT:  And, counsel, how -- I know you cited the

1    sentences that have been imposed in regards to some of the

2    other defendants that were charged in the cases that also came

3    out of this investigation, do you recall the relative criminal

4    histories of those defendants?

5            MR. MORAN:  All of them were charged with -- I do,

6    your Honor.  Leroy Martin and Finley and Rucker were convicted

7    on straight firearm possession, so there weren't any issues of

8    career offender status.  I think they all had prior

9    convictions, but none of them would have been career offenders

03:17 10   because there wasn't a predicate offense.  Khyron Jolley, who

11   received the 120-month sentence, was a career offender, and he

12   was also convicted of a drug offense.  The career offender

13   number was at play there.  The 120 months would have been the

14   maximum sentence on the firearm possession.

15           THE COURT:  Okay.

16           Thank you, counsel.

17           Mr. Garrity, I'll hear your recommendation.

18           MR. GARRITY:  Yes, your Honor.

19           Your Honor, before I make my argument with respect to

03:18 20   what we think the sentence should be, Mr. Thompson's sister,

21   Erika St. John, is here and would like to address the Court, if

22   the Court wishes to hear from her.

23           THE COURT:  Counsel, I didn't receive any written

24   materials.  Is this in lieu of a written material?

25           MR. GARRITY:  It is, your Honor.  I did not receive

1    any written statement from her.

2             THE COURT:  Mr. Moran --

3             MR. MORAN:  I don't object, your Honor.

4             THE COURT:  Why don't we have her come to the podium

5    here.

6             Good afternoon.  And can you just state your name for

7    the record?

8             MS. ST. JOHN:  Erika St. John.

9             THE COURT:  And your relationship to Mr. Thompson?

03:18 10          MS. ST. JOHN:  Phillip Thompson is my baby brother.

11            THE COURT:  I'll hear you.

12            MS. ST. JOHN:  My brother's had a difficult life.

13   We've all had a difficult life.

14            Approximately 18 years ago, our older sister was

15   murdered by her boyfriend of 11 years, and we were all there to

16   witness it.  We all went different paths in our life, and

17   unfortunately, Phillip did not have the mental counseling that

18   he should have had to get him through that difficult time and

19   even growing up.  And I believe that that's part of why he did

03:19 20   turn to gangs, because he needed some type of stability.  He

21   was able to get out of it.  He was able to get out of it, might

22   have been too late, he did get shot by a shotgun, he did get

23   out of the gang, 36 pellets in his back at 19 years old.  My

24   brother has been through a lot, and he hasn't sought what he

25   needs for mental stability to get through this.

1      As he's gotten older, he's gotten better.  The last

2  time he got -- the last time he was incarcerated, when he got

3  out, he did seek and obtained his auctioneer's license, so he

4  began selling cars or buying and selling cars.  He was trying

5  to get on the right path, but, unfortunately, we all come

6  across some stumbling block that can knock us back down.

7      I just ask that the Court keep into consideration that

8  he's been through that.

9      Our mom is sick, so if there's any way possible he can

03:20 10  stay in Massachusetts, it would be great, and just get him the

11  help that he needs.

12      THE COURT:  Thank you.

13      MS. ST. JOHN:  Thank you.

14      THE COURT:  Mr. Garrity, I'll hear you.

15      MR. GARRITY:  As my sentencing memo indicated, we're

16  asking for a sentence of 24 months.  We agree with the

17  government with the three years of supervised release.  Phillip

18  agrees that's necessary, both to protect the public and to get

19  the help and treatment that we suggest he needs, and I think,

03:20 20  as outlined by Dr. Mart's two reports.  Certainly his record is

21  bad, to say the least.  Certainly the conduct, having a gun in

22  combination with drugs, is not good whatsoever, and I don't

23  disagree with the government that that sort of activity poisons

24  communities like Lynn and Revere, as outlined by the

25  government.  But every case is different, obviously, and

1    Phillip didn't come into the world equipped with the skills

2    other people have, as Dr. Mart indicated.  He has below average

3    intelligence.  That affected his schoolwork, affected how he

4    interacted with peers at school, has affected his life to a

5    great extent.  And on top of that, he had the trauma of his

6    sister being murdered, I think, when he was nine or he ten.

7    She had four children, at least one or two who were the same

8    age as Phillip.  He spent a lot of time with those children,

9    would sleep over her house quite a bit.  So her murder had a

03:21  10   huge affect on Phillip, and I think that's been evidenced by

11   Dr. Mart's evaluation.  He's suffered post-traumatic stress as

12   a result of that.  It's led him, along with the low

13   intelligence, in a number of instances to act in a way that's

14   counterproductive, but it's somewhat consistent, as outlined by

15   Dr. Mart.  He has possessed weapons to -- as a defensive

16   mechanism.  You know, his, I guess, mental capabilities didn't

17   allow him to make the right choices, led him to say, I'm going

18   to have a gun to protect myself, not to be in the same position

19   my sister was in, all of which, I think, puts him in a

03:22  20   different category than other people who come into gangs and

21   who are -- who have better mental capabilities, who don't have

22   the trauma like Phillip had of his sister being killed.

23         So certainly he needs to be punished.  We suggest 24

24   months is punishment, but I think that punishment should be

25   tempered with the realization that Phillip most likely engaged

1    in this act and his prior acts because of his problems.  That

2    can be dealt with while he's out on release.  He's never had

3    treatment, never really been evaluated by psychologists before.

4    As I indicated, he never engaged, for whatever reason, with

5    Tri-City when he was younger, never got the treatment that he

6    really needed.  And I think the affect on Phillip can be shown

7    most dramatically by the fact that he of his siblings is the

8    only one that really had problems since the murder of his

9    sister.  All of his brothers and sisters are successful in

03:24 10   their lives.  One is a nurse.  None of them have substance

11   abuse issues that I'm aware of.  I think it's outlined in the

12   PSR that none of them do.  None of them have criminal records.

13   That event really had a dramatic effect on Phillip, but it can

14   be dealt with while he's out on release.  He can engage in

15   counseling, he can be -- get the medications that he's never

16   had that he needs.  And if you combine that with a condition of

17   release that he get he vocational training, that he not

18   associate with any gang members, although he's out of the gang,

19   as his sister indicates, but if you combine that, put that as a

03:24 20   condition, as well as a condition of searches of his place and

21   person, as we argued for in our memo, I think that would

22   protect the public.  Straight-out incarceration for Phillip,

23   sure, it's punishment, sure, it sends a general message of

24   deterrence, but it doesn't deal with the underlying issue

25   Phillip really has, which led him here in the first place.

1        So, yes, he needs to be punished, but it should be

2    tempered with the realization he needs treatment to make sure

3    he doesn't come back here ever again.

4        THE COURT:  Thank you, counsel.

5        Mr. Thompson, you're not required to speak at this

6    point, but if you'd like to, I'd hear you now.

7        THE DEFENDANT:  First, I would like to apologize to my

8    family for putting them through everything, and I want to

9    apologize to my community.  I realize -- this 15 months that

03:25 10    I've been incarcerated made me realize the negative ripple

11    effect that I have brung to my community.  And while I'm

12    incarcerated, I plan on bettering myself, getting education and

13    as much help as I can while I'm in here.  And when I'm

14    released, I want to, you know, get some type of counseling, you

15    know, and I just really mainly want to apologize -- I wish my

16    mother was here so she could hear this, I really want to

17    apologize to her for putting her through so much grief.

18        That's about it.

19        THE COURT:  Thank you.

03:26 20    Mr. Thompson, counsel, I'm going to take a brief

21    recess.  I'll come back to the bench.

22    Thank you.

23        THE CLERK:  All rise.

24    (Recess taken.)

25        THE COURT:  Counsel, I want to thank you for your

advocacy today, as well as the materials you put together for

me in the written materials, which, as I said, I've had a

chance to review.  I want to thank Mr. Thompson for your

statement today, and I want to thank your sister as well for

her statement to this Court, and I'm sure she'll pass on to

your mother the sentiments you expressed today.

Mr. Thompson, to determine a reasonable sentence, I

must and I have considered -- and you can be seated for the

moment, I want to explain my reasons, and then I'll formerly

impose sentence.

I must and I have considered a number of factors,

Mr. Thompson: the advisory guideline sentencing range, the

nature and circumstances of the crime that you committed here,

your personal history and characteristics, and the need for the

sentence to reflect the seriousness of the offense; promote

respect for the law; provide just punishment and adequate

deterrence; and avoid unwarranted sentencing disparities; and

all of the factors under Title 18, United States Code, 3553(a).

I do want to say a few things about some of the

factors as I've weighed them in considering what would be a

reasonable sentence here.

You've been charged in this case with firearms

possession.  I won't go into all of the details that have been

reflected in the presentence report, but certainly this charge

that you've pled guilty to is a serious charge, particularly

1    where the firearm recovered here was, as Mr. Moran pointed out,

2    in the context of paraphernalia, drug paraphernalia, that

3    suggested distribution.

4          I don't have to repeat all that's been said about the

5    danger of firearms in our community, but certainly that's what

6    the law that you've violated is aimed at, and certainly is

7    reflected here on the record before me now.

8          Mr. Thompson, though, I have also considered your

9    personal history.  If I recall correctly, you're 26 years old.

03:38 10   Your sister spoke quite movingly about your upbringing.  I know

11   that from the PSR that your father was not a presence in your

12   life growing up, and that you were raised by your mother in the

13   company of several siblings.

14         I also know, and I don't think the parties dispute it

15   at all, that your older sister being murdered when you were 10

16   had a lasting impact on you.  I certainly can't imagine the

17   impact that would have on a 10-year-old child or the lasting

18   impact that may have on you as you sit before me.

19         Sadly, Mr. Thompson, this is not at all your first

03:39 20   interaction with law enforcement.  I won't recount all that's

21   been recounted in the presentence report, but certainly your

22   interaction with law enforcement goes back to your pre-teens

23   and resulted in juvenile adjudications for some serious

24   offenses, including offenses involving assault and battery with

25   dangerous weapons, and it's fair to say that both your

1   childhood and your education and school were interrupted by

2   these periods of detention, which obviously could not have had

3   a positive effect either on your upbringing or on the influence

4   on the choices that you've made.

5         But even just focusing on your adult convictions and

6   incarcerations, they reflect serious crimes and serious risk of

7   harm to the community.  At age 18, if I recall correctly, you

8   were convicted for gun possession and were sentenced to a

9   period of incarceration.  Later you were convicted of A and B

03:41 10   dangerous weapon, and in the course of I think it was the

11   latter incarceration, as I think has been alluded to today, you

12   faced a further period of incarceration for assaulting a

13   corrections officer, all dangerous and concerning acts to this

14   Court, particularly where one of those occurred after your

15   incarceration.

16         I should note, as I think was reflected in the PSR,

17   you've had some disciplinary issues even during the 15 months,

18   I think you said it was, that you've been incarcerated awaiting

19   disposition of this case, which I wish were not the case,

03:41 20   Mr. Thompson, but it's certainly something I have to consider

21   when I think about the appropriate sentence here, particularly

22   when those disciplinary reports include fighting, allegations

23   of assault, and disobeying the rules.

24         I certainly understand Mr. Garrity's point that he's

25   made and was reflected to a certain extent in Dr. Mart's report

1   that you're engaging in some of this conduct, particularly in

2   regards to gun possession, may be in part a reaction to your

3   sister's murder when you were a young child, ten, but I also

4   think there's a recognition that it may be in part a reaction

5   to you yourself having been shot when you were 18, if I'm

6   recalling correctly.  That is, it's not clear to me on this

7   record how much is the former and how much is the latter, and

8   the latter, your having been shot being a reflection of the

9   violence or risk of violence that you yourself have been

03:42 10  involved in in regards to your gang affiliation and the other

11  criminal conduct which is reflected on the convictions on your

12  record.

13       Mr. Thompson, I've also considered the advisory

14  guideline sentencing range here, which is 37 to 46 months.  The

15  government's recommendation, as I think counsel recognizes on

16  both sides, is within that guideline sentencing range.

17  Certainly I can't assume the reasonableness of the guidelines,

18  but I think the fact that the recommendation is in the

19  guideline range is certainly an advisory guide of sentences for

03:43 20  similarly situated defendants who have been charged with

21  similar crimes and have similar criminal backgrounds.

22       I also think that there is, respectfully to your

23  counsel and even to the government counsel, I think there's a

24  view of the facts here and the record here that would suggest

25  that a recommendation even higher than what the government is

1  proposing here would be appropriate on this record, so I've

2  considered that as well.

3  Finally, Mr. Thompson, I've considered all of the

4  goals of sentencing, and I won't repeat all of them, but

5  certainly they reflect that a serious crime deserves a serious

6  sentence, and that's not to suggest I didn't consider the

7  24-month sentence that Mr. Garrity urges me to adopt here,

8  because any period of incarceration in federal prison is

9  serious.  But what is the appropriate sentence for the

03:44 10  seriousness of your offense in light of your background and

11  also whether or not the sentence will serve as just punishment

12  I considered the information put before me in regards to

13  certain other defendants who were charged as a result of this

14  investigation, and certainly the sentence that's recommended

15  here is on the lower end of those sentences in concert with

16  sentences that were imposed on individuals with criminal

17  histories, and so I can't say that the sentence being

18  recommended here is out of the realm for other defendants being

19  charged here.

03:45 20  And I do think that both general and specific

21  deterrence, that is, deterrence to other people not to commit

22  this crime, but also to you, Mr. Thompson, that you have to

23  right your ship.  You had previously served a term of

24  incarceration for a series of violent crimes, and, yet, there's

25  still concerns about the disciplinary issues that I'm seeing

1  during the course of your incarceration.  And I did give

2  careful thought to Dr. Mart's report, including the supplement,

3  as well as your counsel's arguments in this regard, but I don't

4  think that the information contained in those reports or the

5  conclusions mitigates the sentence that I should impose here,

6  given all of the goals of sentencing.  I do think that I very

7  much have that in mind in crafting the conditions of supervised

8  release, though, that will follow that sentence.

9         Based on all those considerations, Mr. Thompson, and

03:46 10  having considered the arguments made by both parties, I will

11  impose a sentence of 42 months of incarceration; three years of

12  supervised release, with a series of conditions I'll announce

13  in a moment; no fine; and the mandatory $100 special

14  assessment.

15         Counsel, before I formally impose sentence, anything

16  further that I should address, Mr. Moran?

17         MR. MORAN:  The government asks that you would grant

18  the government's motion for forfeiture, which is document

19  number 39 and includes forfeiture in the pronouncement of the

03:47 20  formal sentence.

21         THE COURT:  Counsel, is this in regards to the

22  firearms themselves?

23         MR. MORAN:  Yes, your Honor, and to the ammunition.

24         THE COURT:  Any objection to this, counsel?

25         MR. GARRITY:  No, your Honor.

1          THE COURT:  I will incorporate that into the judgment.

2          MR. MORAN:  Thank you, your Honor.

3          THE COURT:  Mr. Garrity.

4          MR. GARRITY:  Nothing further, your Honor.

5          THE COURT:  Counsel, just give me a moment.

6          (Pause.)

7          THE COURT:  Counsel, Mr. Moran alluded to a number of

8     conditions that I'm inclined to impose as part of the terms of

9     supervised release.

03:47 10          Mr. Garrity, were there any conditions that you're

11    asking me to consider in regards to the term of incarceration

12    or term of supervised release but as to the incarceration?

13          MR. GARRITY:  Your Honor, given what Dr. Mart found in

14    his evaluation, perhaps if you could recommend to the Bureau of

15    Prisons that Mr. Thompson receive mental health treatment and

16    medication while incarcerated.

17          THE COURT:  Okay.

18          MR. GARRITY:  Perhaps -- I don't know where they would

19    place him in terms of security level, but maybe recommendation

03:48 20    of placement at Fort Devens.

21          THE COURT:  Okay.

22          MR. GARRITY:  Okay.

23          THE COURT:  I'll include that.

24          MR. MORAN:  I don't know if Fort Devens is -- would

25    take him because I think they have limited non-medical space,

1    but I think FCI Danbury in Western Connecticut is being

2    converted to a male facility, so that may be more appropriate.

3              THE COURT:  Okay.

4              MR. MORAN:  And also close by.

5              THE COURT:  Counsel, I can certainly make reference to

6    Devens, if you'd like me to.  I could also frame it in language

7    of the closest facility to Massachusetts that's commensurate

8    with Mr. Thompson's classification, as well as any evaluation

9    and assessment that may be made.

03:49 10           MR. GARRITY:  That would be fine, Judge.  Thank you.

11             THE COURT:  Okay.

12             Mr. Thompson, I am going to ask you to rise at this

13   time.

14             Mr. Thompson, pursuant to the Sentencing Reform Act of

15   1984, and having considered the sentencing factors enumerated

16   under Title 18, United States Code, 3553(a), it is the judgment

17   of this Court that you're hereby sentenced to the custody of

18   the Bureau of Prisons for a period of 42 months.

19             I will make a judicial recommendation, one, that you

03:49 20   receive an evaluation and assessment, and if BOP team deems it

21   necessary, treatment in regards to your mental condition.

22             I will also recommend that you be housed in a facility

23   closest to Massachusetts that's commensurate with both your

24   security classification and any assessment that the BOP makes

25   in regards to mental condition.

1          Counsel, I think there was also the proposal of a

2     recommendation that he participate in any substance abuse

3     treatment to the extent that the Bureau of Prisons deems that

4     appropriate, and I'll include that recommendation.

5          MR. GARRITY:  Thank you.

6          THE COURT:  Mr. Thompson, upon your release from

7     imprisonment, you shall be placed on a term of supervised

8     release for a term of three years.

9          Within 72 hours of your release from the custody of

03:51 10    the Bureau of Prisons you shall report in person to the

11    district to which you are released.

12         I will also make a judicial recommendation that you

13    consider, upon your release, Mr. Thompson, participating in

14    this court's and this Probation Office's RESTART program during

15    the term of your supervised release.  I'm sure that Probation

16    and your counsel can provide you more information about it.

17    It's a program that you have to agree to participate in but may

18    be beneficial to you upon your release.

19         I'm not imposing a fine, as I find you do not have the

03:51 20    financial ability to pay one.

21         I will impose the preliminary order of forfeiture

22    sought by the government in regards to the firearms that were

23    seized in this case.

24         Mr. Thompson, while you're under the supervision of

25    the Probation Office you shall comply with the following terms

1 and conditions:  You shall not commit another federal, state or

2 local crime, and shall not illegally possess a controlled

3 substance.  You shall refrain from any unlawful use of a

4 controlled substance.  You shall submit to one drug test within

5 15 days of your release from imprisonment and at least two

6 periodic drug tests thereafter, not to exceed 104 tests per

7 year as may be directed by Probation.

8    You shall submit to the collection of a DNA sample as

9 directed by Probation, and you shall comply with all the

03:52 10 standard conditions that will be reflected in the written

11 judgment that I will issue.

12    You are prohibited from possessing a firearm,

13 destructive device or other dangerous weapon.

14    You are prohibited from associating with members and

15 associates at the Asian Boys Gang.

16    You are to participate in a program of substance abuse

17 counseling, as may be directed by Probation, and that program

18 may also include drug testing not to exceed 104 drug tests per

19 year.  You shall be required to contribute to the costs of any

03:53 20 such treatment based on your ability to pay or the availability

21 of third-party payment.

22    You shall also participate in a mental health

23 treatment program as directed by Probation, and you shall also

24 participate in a manualized cognitive behavioral treatment

25 program or any vocational services program which may be

1  directed by Probation.  As to each of these treatment programs,

2  again, you shall be required to contribute to the costs of

3  these services based on your ability to pay or the availability

4  of third-party payment.

5       I also order that you shall pay to the United States a

6  special assessment of $100, which shall be due immediately.

7       Let me just ask Probation, were there any other

8  conditions you wanted me to consider imposing?

9       PROBATION OFFICER:  No, your Honor, thank you.

03:54 10      THE COURT:  Anything else, Mr. Moran?

11      MR. MORAN:  No, your Honor.

12      THE COURT:  Mr. Garrity?

13      MR. GARRITY:  No, your Honor.

14      THE COURT:  That shall be the judgment of the Court.

15  You may be seated.

16      MR. GARRITY:  Thank you.

17      THE COURT:  Other than advising Mr. Thompson of his

18  appellate rights, counsel, anything else that I should take up

19  at this time?

03:54 20      MR. MORAN:  No, your Honor.

21      THE COURT:  Mr. Garrity?

22      MR. GARRITY:  No, your Honor.

23      THE COURT:  Mr. Thompson, my memory is there was no

24  plea agreement here, if I recall.

25      MR. GARRITY:  That's correct, your Honor.

1          THE COURT:  Okay.

2          Mr. Thompson, I need to advise you of your appellate

3    rights.

4          You can appeal your conviction if you believe your

5    guilty plea was unlawful or involuntary or if there's some

6    other fundamental defect in the proceeding that was not waived

7    by your guilty plea.  You also have the right to appeal the

8    sentence I've just imposed, particularly if you think the

9    sentence was contrary to law.

03:54 10          If you're unable to pay the costs of appeal, you may

11   ask permission to have those costs waived and appeal without

12   paying.

13         You must file any notice of appeal within 14 days

14   after the entry of my judgment.

15         If you request, the clerk of this court can

16   immediately prepare and file a notice of appeal on your behalf.

17   Do you understand?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Okay.

03:55 20          Mr. Thompson, I do wish you good luck.  You -- I

21   imposed the period of supervised release of three years here

22   because I thought that was an appropriate component of your

23   sentence here.  Sadly, often when I see defendants again, it's

24   because there's been some problem with compliance of the

25   conditions.  I hope that's not the case with you, and I hope

1    you choose to participate in the RESTART program and I see you

2    for a positive reason as a result of this program.  But good

3    luck to you.

4              THE DEFENDANT:  Thank you.

5              MR. GARRITY:  Thank you, your Honor.

6              THE CLERK:  All rise.

7              (Court adjourned at 3:55 p.m.)

8

9                   - - - - - - - - - - - -

10                        CERTIFICATION

11             I certify that the foregoing is a correct transcript

12   of the record of proceedings in the above-entitled matter to

13   the best of my skill and ability.

14

15

16

17   /s/Debra M. Joyce                   November 29, 2014
     Debra M. Joyce, RMR, CRR           Date
18   Official Court Reporter

19

20

21

22

23

24

25